Breitel, J.
Plaintiff, Neil Saulia, brought this action to establish his right to burial and to control the burials in his deceased father’s cemetery family plot. After trial, in which plaintiff recovered a declaratory judgment in his favor, the Appellate Division reversed and declared that defendant Concetta Saulia, plaintiff’s stepmother, alone has the power to determine the right to burial in the plot.
The issue is whether the child of a deceased cemetery plot owner has a right to be buried in or to control burial in such plot. Under the applicable statute (Membership Corporations Law, § 84, subd. 7) plaintiff would have had a right to be buried in the father’s plot had he predeceased his father, or had its ownership passed by intestacy. Plaintiff’s deceased father, however, as owner of the plot made a specific devise of the family plot to his surviving widow, and she has contended, therefore, that the son has no right to control burial in the plot.
The father, Charles Saulia, had purchased the plot on March 23, 1920. Interred in the plot since the purchase were Charles ’ first wife, and her mother, Charles’ father, and a brother of Charles, and now Charles himself. Absent a specific devise, authorized under subdivision 6 of section 84 of the Membership Corporations Law, the ownership of the plot would descend to plaintiff son, the father’s only child, Neil Saulia, and, absent an objection filed by the father during his lifetime under subdivision 7 of the section, Neil would have had a right of burial in the plot during his father’s lifetime. The father, however, by will devised the plot to his widow in the following terms. “ I give, devise and bequeath all of my right, title and interest in and to the family plot owned by me in the Greenwood Cemetery, in the Borough of Brooklyn, City and State of New York, to my beloved wife, Concetta, if she survives me. In the event my wife predeceases me, and only in that event, I give, devise and bequeath the aforesaid family plot to my dear son, Neil Saulia, provided, however, that my son, Neil Saulia, inters my remains in the said plot.”
The widow, who had been married to Charles for 25 years, claimed the right to exclude the son from burial in the plot because of the devise, and also testified to that effect upon the trial. Because of the dispute, Neil brought this action.
*83 It is concluded that the order should be modified and declaratory judgment in favor of the son, Neil Saulia, should be rendered to the extent that the son be accorded a right to burial in the family plot. Reading the will provision it is evident that the testator did not intend to exclude the son from burial in the family plot, and, on the contrary, intended otherwise, and that the devise to the surviving widow conveyed ownership as well as the general possession, care and control of the family plot, without cutting off the burial rights of the son.
At common law there were very few burial rights and very few rules covering the right of interment or for that matter the devolution of ownership in cemetery plots (see, generally, Jackson, Law of Cadavers [2d ed.], pp. 368-369). In New York the questions of devolution of ownership and eligibility for burial have been covered by statute for over a century (see L. 1847, ch. 133, § 11), while statutes conferring rights to burial, as distinguished from eligibility for burial, appeared some 50 years later (L. 1900, ch. 715, § 1). Once there is an interment in a cemetery plot it becomes inalienable, except by specific devise alone (Membership Corporations Law, § 84, subd. 6). The statute also provides for a right of burial in the owner and his surviving spouse and during the life of the owner, in a spouse who predeceases the owner and an ancestor or descendent to the first degree, except as objections may be filed by an owner, and even then such objections are variously conditioned (§ 84, subd. 7). (iSee, generally, Jackson, op. cit., pp. 365-372, but note that the New York statutes have been amended since publication.)
The difficulty in this case arises from the specific devise to the widow, for otherwise there would be no question that the son, and the widow as well, would have a statutory right of burial in the decedent’s cemetery plot.
That will, although containing an unqualified devise, should be carefully scrutinized to determine whether the formal words are a complete and accurate reflection of the testator’s intent. At the onset it should be noted that the will provision shows ineptness or unfamiliarity in applying the statute since it was quite unnecessary for testator as a plot owner to condition his alternative devise to the son on the son’s permitting his father’s *84 burial in the plot. This strongly suggests that too literal a reading of the testamentary provision is inappropriate and that instead the provision must be read on the premise, demonstrated to be true, that the draftsman was not fully aware of the legal impact of the terms used.
The full intention of the testator can be directly gleaned not merely from his words of devise but from other language present, and the alternative devise. The devise refers to a “ family plot ’ ’, thus identifying it as a place for the interment of members of the family of which, of course, Neil Saulia, as the father’s only child, was a member. Moreover, the devise is to the widow if she survives the testator; otherwise the devise is made to the son. This suggests that in making the specific devise testator was not treating with burial rights but with the possession, care and control of the plot. It is clear that he contemplated that both his “dear son” and his “beloved wife ” would, at their wish, be buried in the family plot, and did not intend to empower the widow to bar the son if she survived. It would make little sense for him to make an alternative devise to the son at the same time that he would cut off the statutory burial right of the son if the widow survived and took as the primary devisee.
It has been long recognized in the law of cemeteries that there is a difference between the ownership of a cemetery plot and the right to burial in the plot, and there has also been a difference of long standing among ownership, the right of general possession, care and control, and the right to determine who is to be buried in a plot. (Jackson, op. cit., pp. 371, 373-376). The statute recognizes some of these differences (§ 84, subds. 6, 8, 10). Thus an owner of a plot, once there has been an interment in it, not only cannot alienate it, but he cannot exclude a right of burial in a spouse, or of parents or children except by a highly conditional objection filed, and then with provision for alternative burial.
The unnatural hardship in this case, created only by the awkward draftsmanship of the specific devise, is partially ameliorated by reading the provision in the light of sophisticated cemetery law, as well as the patently clear intentions of the legally unsophisticated family plot owner. By doing so it *85 is recognized that the ordinary concepts of title, ownership, and devolution of title applicable to real property do not apply to cemetery plots.
It would be unnecessary to impose some new kind of trust of undefined effect on the rights of interment as laid down in the statute, in order to sustain the son’s right to interment, and unwarranted, to go further in order to find a broad family right in violation of the pre-emptive statutory scheme.* It is enough that whatever power and rights were conferred by the devise did not include destruction of the statutory right of burial that the son possessed until his father’s death.
Thus analyzed, while the widow retains the ownership of the plot and the possession, care and control, the son has a right to be buried in the plot. Because the widow retains ownership she, and not the son, may determine what other persons may be buried in the plot. This may not carry out fully the likely intention of the testator, but his intentions can only be followed to the extent that he manifested them in his will, however liberally construed. To go beyond giving the son the right to his own interment in the plot would require, on any theory suggested, a complete nullification of the specific devise to the widow, since she has always had a statutory right of her own to interment, and to joint possession, care and control during her lifetime.
Of course, this case presents a sad and unnatural dispute. It is difficult to plumb a bitterness in the widow so great as to require profaning the memory of her spouse of 25 years by preventing common family burial in the cemetery plot he devised to her. No issue, however serious, between her and the son justifies such an attitude, but the court’s power is limited by the statute and a reasonable reading of the will.
Accordingly, the order should be modified, without costs, and declaratory judgment in favor of plaintiff Neil Saulia rendered to the extent of establishing his right to burial in the family *86 plot in accordance with the provisions of section 84 of the Membership Corporations Law.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Jasen concur.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

 Notably, in the absence of statute, and in order to prevent a family burial plot’s passing to strangers to the blood under a residuary bequest and devise, the leading American case in this area analyzed the problem in terms of a trust for the benefit of the family members (Matter of Waldron, 26 R. I. 84). (See, also, Jackson, op. cit., pp. 369-370.)