■ In the Matter of EVERGREEN CEMETERY ASSOCIATION, INC., Respondent, v. ERNA JURGENSEN et al., Appellants.— Per Curiam. Appeal by the respondents from a judgment of the Supreme Court at Special Term, entered in Sullivan County on September 15, 1969, which granted the petitioner's (Cemetery Association) application for an order pursuant to section 89 of the Membership Corporations Law for the disinterment of the respondents' decedent, Gustav Jurgensen. On or about December 9 or 10, 1965, Charles and Jessie Irene Wells agreed to purchase and the Cemetery Association agreed to sell a certain burial lot for $250. A conveyance of the premises was apparently prepared on the 10th of December, 1965 by one of the officers of the Association and then forwarded to another officer to be signed by him, notarized and delivered to the Wells upon payment of the purchase price. There was some conflicting evidence in the record as to when this conveyance was delivered to the Wells, but Special Term found it was mailed to them on December 14, 1965. In any event, the first agreement for the purchase and sale of this lot occurred with the Wells in December of 1965. On March 2, 1966 Gustav Jurgensen died and the following day his daughter agreed to purchase and the

Cemetery Association to sell the same burial lot theretofore chosen by the Wells. The Association was paid the price for the lot on March 2, 1966 or soon thereafter and subsequently a conveyance to Erna Jurgensen (widow of Gustav) dated April 8, 1966 was signed by one of the officers of the Cemetery Association. The remains of Gustav Jurgensen were interred in the lot on March 5, 1966. At the time the daughter of Gustav Jurgensen inspected and purchased the burial lot, there was nothing in and about the cemetery to give actual notice that someone else claimed ownership thereof and the conveyance to Wells was not recorded in the County Clerk's office so there is no question here of imputed notice. The first burial on this lot was that of Gustav Jurgensen. In April of 1966 the officials of the Cemetery Association became aware of the double sale of the burial lot and after advising the interested parties of the now obvious error, they attempted to negotiate a solution by refunding the purchase price to either party and/or giving either one another burial lot with reburial of Gustav Jurgensen at the Association's expense if his representatives would agree to surrender their claim to the lot. For quite personal reasons, the Wells refused to accept the return of their money or an adjacent burial lot and the Jurgensens were, of course, reluctant to disinter the remains of Gustav. For approximately the next two years neither of the sets of owners made any attempt to finally establish ownership of the burial lot and rights of burial therein in the event of subsequent deaths. On May 11, 1968, Jessie Irene Wells (one of the grantees on the 1965 conveyance) caused her father to be buried in the subject burial lot next to the resting place of Gustav Jurgensen. It is noted that the undertaker in charge of this funeral was the president of the Cemetery Association. Thereafter, and by notice of motion dated May 28, 1968, the Cemetery Association brought this proceeding to permit the removal of the remains of Gustav Jurgensen from the burial lot. The Cemetery Association for reasons best known to it has decided that the body of Gustav Jurgensen is the one to be disinterred. Section 89 of the Membership Corporations Law governs the disinterment and removal of bodies in the subject cemetery and since the heirs of Gustav Jurgensen would not consent to the removal of his remains, the removal can only be accomplished if the County Court or Supreme Court grants permission. Special Term decided that the issue of legal title to the burial lot was decisive as to disinterment and upon its finding that the Wells had legal title and ownership of the lot (Membership Corporations Law, §§ 70, 84) ordered disinterment. In the controversy over ownership of a lot not containing any burials or in determining rights of burial, the question of title and ownership of the burial lot is obviously of great import, if not the sole consideration. However, the question of disinterment of a body is dependent upon the exercise of discretion or equitable jurisdiction and in either event, the effect of legal title is merely a reason to be considered by the court. (Cf. *Matter of Currier* [*Woodlawn Cemetery*], 300 N. Y. 162, 164; *Yome* v. *Gorman*, 242 N. Y. 395, 402, 403.) For purposes of the present case we assume that the trial court correctly decided that the Wells acquired title to the burial lot, however, we do not affirm that particular finding of Special Term. It is noted that the Jurgensens were purchasers in good faith, for value, and secured possession by the burial of Gustav Jurgensen prior to notice of any claim to ownership by the Wells. The reason asserted by the Wells for wanting ownership of this particular burial lot is extremely weak and unpersuasive. To compound the matter, the Wells proceeded to cause a burial in the occupied lot with full knowledge of the fact that there was a dispute as to title. The Cemetery Association created the present problem and since damages, if any, against it for its error are already perfected, it has no persuasive concern in the disinterment of Gustav Jurgensen. We perceive neither any equities nor

legal rights in favor of Wells which are sufficient to justify disturbing the rest and repose of the remains of Gustav Jurgensen against the wishes of his wife and children. Our present decision is limited to holding that the record does not contain sufficient evidence to support the exercise of discretion or enforcement of equitable rights by ordering the disinterment of the remains of Gustav Jurgensen. Judgment reversed, on the law and the facts, with costs, and petition dismissed. Herlihy, P. J., Reynolds, Staley, Jr., Greenblott and Sweeney, JJ., concur in memorandum *Per Curiam*.