520 A.2d 1336

**Esther M. QUESENBERRY, et al.**

v.

**Stephen M. MEGINNISS, et al.**

**No. 814, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 11, 1987.

William P. Dale, Chevy Chase (Evelyn Betts Thomason, Washington, D.C., on the brief), for appellants.

George E. Thomsen, Baltimore, for appellee, Druid Ridge Cemetery.

Argued before WILNER, BISHOP and ROSALYN B. BELL, JJ.

WILNER, Judge.

This proceeding began as an action to quiet title to a right of sepulture. None of the parties much cares whether technically that is a proper form of action, considering that the right of sepulture at issue here, according to statute, "shall not be considered property"; they simply want to know who among them is entitled to control burials in a certain crypt at Druid Ridge Cemetery.

In 1922, Esther R. Meginniss purchased cemetery Lot 703 from the Druid Ridge Cemetery Company. At some point, she built a private mausoleum on the lot, containing, we are told, six burial spaces, two of which she used to inter the remains of her husband and, tragically, four of her infant children.[1] When Mrs. Meginniss died in 1937, she left eight surviving children, including her daughters Dorothy M. Quesenberry and Grace Foreman, and a simple Will that left everything to those daughters. The Will stated:

"After the payment of my just debts and funeral expenses I give and bequeath unto my two daughters, G. Elizabeth Meginniss [Grace Foreman] and Dorothy M. Quesenberry all my earthly possessions, including two diamond rings, each to take one as may be agreed between them, and as well also all furniture, pictures, silverware, linens, clothing, ornaments, and all monies and investments of which I may die possessed or which may be due me by inheritance or otherwise, to be retained, divided, or disposed of in any manner they may wish or deem best. That is all my possessions are to belong to these two daughters absolutely and without restriction."

The law governing burial lots and crypts at the time of Mrs. Meginniss's death was set forth in Md. Code Ann. art. 23, § 174 (1924), which provided:

"Every burial lot, sold or conveyed in such cemetery and every crypt sold or conveyed in any mausoleum, shall be held by the proprietors thereof for the sole purpose of sepulture and for no other, and shall not in any manner be subject to attachment or execution for debt or affected by the insolvent laws of this State; but the estate of the owner or owners in their respective lots and crypts shall descend as real estate to heirs, *may be devised by will* or may be disposed of by the owner by sale with the approval of the president and managers of the cemetery or

---

1. The children, we were apprised, were buried together in one of the spaces.

mausoleum corporation or of any person or corporation acting as trustee therefor."

(Emphasis supplied.)

For 47 years following Mrs. Meginniss's death, all costs of maintaining the cemetery lot and improvements were billed to and paid by Dorothy Quesenberry or her daughter, Esther M. Quesenberry. This dispute arose in 1984 when another of Mrs. Meginniss's children, Irving P. Meginniss, died and his son Stephen Meginniss II sought to establish an ownership interest in the mausoleum.

By 1971 Laws, ch. 786, the Legislature amended the then-current version of art. 23, § 174 (which, through recodification, had become art. 23, § 164). In pertinent part, the statute, as so amended, reads as follows:

"Every burial lot, sold or conveyed in such cemetery and every crypt sold or conveyed in any mausoleum, shall be held by the proprietors thereof for the sole purpose of sepulture and for no other. The interest of any owner in such lot or crypt held by him for the burial of himself or others and not held as an investment shall not be considered property and shall not be subject to attachment or execution for debt or affected by the insolvent laws of this State; but the interest of the owner or owners in such lots and crypts, subject to the rules of the proprietors of the cemetery or mausoleum and to the terms of any contract made with the proprietor: (1) may be disposed of during the owner's lifetime with the consent of the proprietors, (2) *may be disposed of by specific reference thereto in the owner's will, or otherwise,* (3) will pass to the owner's heirs, as that term is defined in § 1–101(f) of the Estates Article of the Code."

(Emphasis added.)

The contention initially asserted by Stephen but subsequently pressed more by Druid Ridge Cemetery is that, under the 1971 statute, and by implication even under the earlier law, a right of sepulture could be devised only "by specific reference thereto in the owner's will," that no such

"specific reference" appears in Mrs. Meginniss's Will, and that the right therefore did not pass under her Will. As a result, the argument goes, the right of sepulture passed by intestacy to Mrs. Meginniss's heirs. In this action filed by or through the two devisees, Grace Foreman and Dorothy Quesenberry [2] against Druid Ridge Cemetery and the other heirs, the Circuit Court for Baltimore County accepted that argument and granted summary judgment in favor of the respondents.[3] The heart of the court's reasoning was:

> "That since there had been an entombment in the Meginniss mausoleum prior to the death of Esther Reges-ter Meginniss in 1937, on the basis of *Gallaher v. Trust-ees of Cherry Hill Methodist Episcopal Church*, 42 Md.App. 186, 399 A.2d 936 (1979), the right of sepulture could pass under the Will of Esther Regester Meginniss only by specific devise.

[and]

> That the change made in 1971 to Article 23, Section 174 (now Article 23, Section 164) of the Maryland Code, specifying that the right of sepulture should pass by Will only by specific devise, was a clarifying change and not a substantive amendment."

We think that the court erred in its interpretation of both *Gallaher* and the 1971 law, and that it therefore reached the wrong conclusion as to the devolution of Mrs. Megin-niss's right of sepulture.

---

**2.** Dorothy Quesenberry died in 1976. Her sole surviving child, Esther Quesenberry, was the co-complainant with her aunt, Grace Foreman. Named as defendants were the other surviving child of Mrs. Megin-niss, the children of her deceased children, and Druid Ridge Ceme-tery.

**3.** Although, as noted, the case arose from a controversy between the complainants and Stephen Meginniss, as the case progressed the dispute became more one between the complainants and Druid Ridge Cemetery. It was the cemetery's motion for summary judgment, in which none of the heirs joined, that was granted.

There can be little doubt as to Mrs. Meginniss's intention. She was certainly aware of her interest in the mausoleum, having built it and interred in it her husband and four of her children. She obviously knew that, after her death, there would be room for three other interments, that she therefore had a right of sepulture that someone else would have to exercise after her death, and that, with eight children (and a number of grandchildren), but only three spaces, there would not be room for all of her progeny. She is presumed to have known the law, including the law permitting her to devise her right of sepulture by Will, and, having gone to the trouble of executing a Will, she is presumed to have intended all of her property to pass under it, rather than by intestacy. *See Redwood v. Howison,* 129 Md. 577, 590, 99 A. 863 (1917).

■ We see nothing in the statute in effect at the time (§ 174) requiring any specific reference to the right of sepulture in order for it to pass by Will. Except for the condition attached to a *sale,* the statute treated the right of sepulture as the equivalent of real estate, declaring that it "shall descend as real estate to heirs, [and] may be devised by will...." As it was not necessary in a residuary clause to make specific reference to each parcel of real estate intended to pass thereunder, we can see no reason to engraft by judicial fiat such a requirement as to the right of sepulture.

■ The 1971 Act, though not as clear as it could be on the the point, seems to require a specific reference to the right in order for it to pass by Will.[4] But there is no

---

4. The 1971 law, as noted, states that the right "(1) may be disposed of during the owner's lifetime with the consent of the proprietors, (2) may be disposed of by specific reference thereto in the owner's will, *or otherwise,* (3) will pass to the owner's heirs...." (Emphasis added.) In arguing that the statute requires a specific reference in the Will, the parties assume that the words "or otherwise" are intended to introduce, and therefore form part of, clause (3). That is certainly a permissible construction, and, were it not for the comma following the word "otherwise," it would be a grammatically necessary one.

reasonable way to read that provision as merely "a clarifying change and not a substantive amendment." As we observed, no such provision appeared in the preexisting law, either expressly or, as far as we can determine, through judicial construction. For good or ill, the 1971 Act made a clear change in the law, to take effect July 1, 1971. No principle of statutory construction will allow that change to control a disposition made in 1937; a Will is construed with reference to the law as it existed when the Will took effect. *Comegys v. Jones*, 65 Md. 317, 320, 4 A. 567 (1886); *Livingston v. Safe Dep. & Tr. Co.*, 157 Md. 492, 496–97, 146 A. 432 (1929); *Stewart v. Whitehurst*, 268 Md. 589, 591–92, 303 A.2d 393 (1973).

We see nothing in *Gallaher v. Trustees, supra,* 42 Md. App. 186, 399 A.2d 936, requiring the decision reached by the Circuit Court. *Gallaher* involved the unfortunate situation of a cemetery company having sold the same lot to two different people. The second purchaser was the first to use it, and the first purchaser sued to require the second purchaser to disinter the remains placed in the lot.

Quoting in part from *Currier v. Woodlawn Cemetery,* 300 N.Y. 162, 90 N.E.2d 18, 19 (N.Y.1949), we noted a universal recognition of the principle "that the repose of the departed [is] not lightly to be disturbed," from which we concluded:

---

With that comma, however, the phrase could as easily be read as part of clause (2), allowing then for a testamentary disposition either by specific reference or as part of a general, non-specific residuary clause.

The answer lies in the title to the Act which, in pertinent part, describes the Act as providing "that unless the decedent's Will specifically provides otherwise, or the decedent had disposed of his interest therein while alive, a decedent's interest in a burial lot, except if held for investment, shall pass to his heirs and need not be inventoried...." Ch. 786, 1971 Md. Laws 1721, 1722. Given the importance and the function of the title (see Md. Constitution, art. III, § 29), it would seem that the legislative intent was to have the words "or otherwise" be read as part of clause (3) and not clause (2).

"Hence, it is essential to distinguish between controversies over ownership or rights of burial in ground not containing any mortal remains and those where interment has occurred. In the first situation, the question of title and ownership may be of signal importance. Indeed, there is a persuasive suggestion from an authoritative source that title may be the *sole* consideration. *Evergreen Cemetery Association, Inc. v. Jurgensen*, [34 A.D.2d 709], 309 N.Y.S.2d 847, 849 (App.Div.1970). However, where disinterment of a body is at issue, equitable procedures and principles necessarily come into play and 'the effect of legal title is merely a reason to be considered by the Court.' *Id.* The protective power of a court of equity is essential to achieve a proper balance of the considerations, usually delicate, affecting controversies between proponents and opponents of disinterment."

42 Md.App. at 194, 399 A.2d 936 (emphasis in original).

There is no question of disinterment here; there is no conflict between two bona fide purchasers. The issue simply is whether there is any impediment to carrying out the wishes of Mrs. Meginniss as expressed in her Will, and we see none.[5]

In light of that conclusion, we need not consider appellants' alternative argument based on adverse possession.

JUDGMENT REVERSED; APPELLEES TO PAY THE COSTS.

---

**5.** Appellees make much of a statement in *Gallaher*, 42 Md.App. in n. 4 on 193, 399 A.2d 936 that "[o]nce there is an interment on a lot, it becomes inalienable *except* by specific devise." We cited in support of that statement two cases from New York, *Saulia v. Saulia*, 25 N.Y.2d 80, 302 N.Y.S.2d 775, 250 N.E.2d 197 (1969), and *In re Turkish's Estate*, 48 Misc.2d 600, 265 N.Y.S.2d 888, 889 (Surr.Ct.1965). That is indeed the law in New York, but only because a New York statute so provides. *See Saulia*, 302 N.Y.S.2d at 778, 250 N.E.2d at 199; *In re Turkish's Estate*, 265 N.Y.S.2d at 890. The statement as it appeared in n. 4 was clearly *dicta*, not being necessary or even germane to the issues raised and decided in the case, but to the extent that we implied that the Maryland law also requires a specific devise, we were wrong.