**In re Andrew J. LANE, Debtor.**

**Peter H. McCALLION, et al., Appellants,**

**v.**

**Andrew J. LANE, Appellee.**

**No. 91–1022.**

United States Court of Appeals, First Circuit.

Heard May 7, 1991.

Decided July 2, 1991.

Peter H. McCallion, Garrison, N.Y., for appellants.

Charles R. Dougherty with whom Marguerite T. Grant and Hill & Barlow were on brief, Boston, Mass., for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

This is an appeal from a district court order affirming the bankruptcy court's dismissal of an action brought by appellants for the imposition of a constructive trust on certain funds in the chapter 11 estate of appellee Andrew J. Lane, and for a determination that Lane's indebtedness to appellants is nondischargeable. We affirm in part, vacate in part, and remand.

## I

## BACKGROUND

The amended complaint alleges that appellants agreed to sell their shares of stock in Indian Hill Associates, Inc. to appellee Lane for $1,675,000, which was to include a $375,000 downpayment, three installment payments of $350,000 each, and a final installment payment of $250,000. The agreement expressly states that appellants "agree to accept payment from an escrow fund" or in the form of an irrevocable letter of credit. Lane subsequently refused to tender the downpayment until appellants agreed that the last two installment payments were to be contingent upon Lane's obtaining approval for a subdivision. Although appellants acceded to Lane's demands on or about February 12, 1988, Lane had not yet applied for subdivision approval by the time appellants filed their complaint with the bankruptcy court, approximately twenty months later.

Lane ultimately obtained interim credit with which to make the downpayment. Later, Indian Hill Associates, Inc., then controlled by Lane, obtained a $5.7 million line of credit with Bankers Trust, the proceeds of which were to be used only to refinance the purchase of certain real property and to fund Lane's payments to appellants under the Indian Hill stock purchase agreement.

On August 1, 1988, Bankers Trust wired the first installment payment directly to appellants. In early October 1988, Bankers Trust advanced Lane funds with which to make the second installment, but Lane never remitted the second installment to appellants. On October 17, 1988, Lane informed Bankers Trust that he was litigating the stock purchase agreement, and requested that the bank

> hold all advances against the stock purchase price as may become due and payable, in an interest bearing escrow account; such account to be disbursed in

accord with the terms of a final judgment or settlement in the aforesaid litigation [between Lane and appellants]. In the event that you advise us that this arrangement is acceptable, we [Indian Hill Associates, Inc.] will send you a check for $365,876.71 [the amount Bankers Trust had disbursed to Lane for the second installment payment, with accrued interest].[1]

There is no contention that Bankers Trust acceded to the proposal.

Lane filed a chapter 11 petition on March 24, 1989, and appellants eventually initiated the adversary proceeding which precipitated the present appeal.

## II

## DISCUSSION

At the time the bankruptcy court ruled on Lane's motion to dismiss, it had before it, and did not expressly exclude from consideration, certain matters outside the pleadings. Nevertheless, we restrict our review to the complaint and certain exhibits attached to the complaint, which are properly considered part of the pleadings for rule 12(b)(6) purposes.[2] *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *see also PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 29 n. 1 (1st Cir.1991) (unnecessary to address propriety of trial court's consideration of matters outside pleadings when appellate court limits its own analysis to the pleadings); *O'Brien v. DiGrazia*, 544 F.2d 543, 545 (1st Cir.1976) (district court's error in considering matters outside pleadings should not be basis for setting aside a dismissal justifiable without reference to extrinsic matters), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). *See generally* 5 C. Wright & A.

Miller, *Federal Practice and Procedure* § 1327 (1990) (hereinafter "Wright & Miller").

A rule 12(b)(6) dismissal is subject to *de novo* review. We will affirm the dismissal "only if it clearly appears, according to the facts alleged," and any reasonable inferences therefrom, "that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990).

### A. "Constructive Trust" Claim

Four elements are required to establish a constructive trust under New York law:[3] "(1) the existence of a ... fiduciary relationship, (2) the making of a promise, (3) a transfer in reliance on the promise, [and] (4) unjust enrichment." *Hutton v. Klabal*, 726 F.Supp. 67, 73 (S.D.N.Y.1989) (citing *Sharp v. Kosmalski*, 40 N.Y.2d 119, 386 N.Y.S.2d 72, 74–75, 351 N.E.2d 721, 723–24 (1976)). Appellants attempt the required showing of a fiduciary relationship by claiming that Lane agreed to act as escrow agent of the monies Bankers Trust disbursed to Lane to fund the second installment payment. Appellants allege three bases for their contention: (i) Lane's assent to the stock purchase agreement, (ii) the October 17 letter, and (iii) Lane's receipt of funds allegedly intended for appellants' benefit by Lane and Bankers Trust. These grounds are considered in the order presented.

First, the stock purchase agreement provides: "Sellers agree to accept payment from an escrow fund to be released by the bank funding the land purchase *in lieu of* a letter of credit." (Emphasis added). The quoted language neither constituted an escrow agreement between Lane and appellants, nor purported to obligate Lane to establish or fund an escrow account. Ap-

---

**1.** Appellants were provided with a copy of Lane's letter.

**2.** Exhibit A is the Indian Hill Associates, Inc. stock purchase agreement. Exhibit B is the order of a New York State Supreme Court judge in a related case. Exhibit C is the October 17 letter from Lane to Bankers Trust.

**3.** As the district court applied New York substantive law, and the parties rely on it, we do likewise. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1264 (1st Cir.1991) (ordinarily, federal court should honor parties' shared view as to applicable substantive law).

pellants simply agreed to accept any payment disbursed from escrow, in place of payment in the form of a letter of credit.

■ Second, the October 17 letter merely *requests* Bankers Trust to escrow future advances scheduled for disbursement under the Indian Hill Associates, Inc. line of credit; it did not create or fund an escrow account, nor did it obligate *Lane* to disburse funds directly to appellants from escrow in the event Bankers Trust acceded to the proposed escrow arrangement. Furthermore, there is no allegation that Bankers Trust ever acceded to Lane's proposal. Finally, even if an escrow arrangement had eventuated under the October 17 letter, *Bankers Trust*, not Lane, would have been the escrow agent.[4]

■ Third, appellants' putative status as intended beneficiaries of the line of credit with Bankers Trust provides no footing for casting Lane in the role of a fiduciary. Appellants adduce no New York caselaw supporting an intended beneficiary claim to the proceeds from the Indian Hill Associates, Inc. line of credit. Indeed, it does not appear that appellants could qualify as intended beneficiaries under New York law, since any derivative benefit to appellants would be dependent on the decision of Lane

and/or Indian Hill Associates, Inc. to draw on the latter's line of credit with Bankers Trust. *See World Trade Knitting Mills, Inc. v. Lido Knitting Mills, Inc.*, 154 A.D.2d 99, 551 N.Y.S.2d 930, 933 (1990) (performance required under contract must flow *directly* to putative intended beneficiary); *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 469 N.Y.S.2d 948, 950 (1983) (same), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985).

■ In sum, appellants allege no set of facts sufficient to demonstrate the fiduciary relationship required for the establishment of a constructive trust under New York law.[5]

### B. *"Conversion" Claim*

■ Appellants allege that Lane's wrongful refusal to remit the funds disbursed by Bankers Trust for the second installment payment gave rise to a nondischargeable debt for willful conversion under Bankruptcy Code § 523(a)(6). Assuming without deciding that § 523(a)(6) is applicable, appellants' claim cannot succeed as a matter of law, due to their failure to allege facts sufficient to show that the funds allegedly converted *belonged* to appellants.[6] Appellants assert merely that

---

4. Appellants similarly argue that the October 17 letter amounted to a promise that Lane would place the funds for the second installment payment in escrow with Bankers Trust. The reality is, however, that the October 17 letter, at best, was a proposal by Lane to return the second installment to Bankers Trust under certain conditions. Once again, there is no allegation that Bankers Trust accepted the escrow proposal.

5. Even assuming that Lane somehow became a fiduciary of the funds disbursed for the second installment payment, appellants still could not establish a constructive trust, as they have not alleged a transfer in reliance on Lane's fiduciary promise, or in reliance on his fiduciary status. *See Sharp*, 40 N.Y.2d at 122, 386 N.Y.S.2d 72, 351 N.E.2d 721 (even in the absence of an express promise, constructive trust may be imposed on property transferred in reliance on a fiduciary relationship).

Appellants also conclude, without citation to caselaw, that a "resulting trust" was created for their benefit when Lane did not remit to appellants the funds received for the second installment payment. Assuming without deciding that it is appropriate to address such an underdevel-

oped theory of recovery, *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990), we find no legal basis for it. A resulting trust may arise where: (1) an express trust fails, (2) an express trust is fully performed without exhausting the trust estate, or (3) a seller conveys property to a third party at the direction of the purchaser of the property. *Saulia v. Saulia*, 31 A.D.2d 640, 295 N.Y.S.2d 980, 982 (1968) (quoting 4 *Scott on Trusts* § 404.1 at 2922 (2d ed.)), *modified*, 25 N.Y.2d 80, 302 N.Y.S.2d 775, 250 N.E.2d 197 (1969) (declining to apply law of trusts); *see also* Restatement (Second) of Trusts ch. 12 introductory note at 323 (1959) (same). The present circumstances do not conduce to the creation of a resulting trust.

6. Appellants likewise claim that Lane's *retention* of the second installment gave rise to a nondischargeable debt for larceny under Bankruptcy Code § 523(a)(4). Their failure to allege facts sufficient to show title to the funds dictates dismissal of their § 523(a)(4) claim. *See In re Graziano*, 35 B.R. 589, 594 (Bankr.E.D.N.Y. 1983) (defining larceny as requiring, *inter alia*, the taking of *another's* property without consent of the *owner*).

Lane was obliged to transfer the funds to them, not that actual title to the funds was in appellants at the time of the alleged conversion.[7] *See Ahles v. Aztec Enter., Inc.,* 120 A.D.2d 903, 502 N.Y.S.2d 821, 822 (1986) (in action for conversion, "plaintiff must establish legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights").

## C. § 523(a)(2)(A) Claim

■ The complaint alleges that Lane did not intend to comply with the stock purchase agreement from the outset, as evidenced by his refusal to tender the downpayment until appellants acceded to a disadvantageous amendment of the stock purchase agreement which conditioned payment of the last two installments on Lane's obtaining a subdivision approval for which he had not even applied by the time the amended complaint was filed. Appellants insist that these allegations state a claim under Bankruptcy Code § 523(a)(2)(A) that the entire amount Lane owes appellants is nondischargeable as a debt incurred for property (Indian Hill stock) obtained by "false pretenses, false representations, and actual fraud." *See, e.g., In re Krause,* 114 B.R. 582, 606 (Bankr.N.D.Ind.1988) ("if a debtor enters into a contract intending not to comply with its terms and later defaults under that contract, such contract may provide a basis for exceptions to discharge on the grounds of fraud"). At most, an actionable § 523(a)(2)(A) claim must state that the debt was incurred as a proximate result of the claimant's reasonable reliance

on a material misrepresentation of fact knowingly made by the debtor with intent to deceive. *See In re Rubin,* 875 F.2d 755, 759 (9th Cir.1989).[8]

Appellants minimally state an actionable nondischargeability claim under Bankruptcy Code § 523(a)(2)(A). The elements of a fraud claim were either alleged in, or reasonably inferable from, the complaint. The allegation that Lane executed the stock purchase agreement states a claim that Lane knowingly made a material representation that he would comply with its terms. The allegation that appellants transferred their Indian Hill shares to Lane plainly implies that the transfer was made in reliance on Lane's fraudulent promise to pay and that appellants' financial loss proximately resulted from its breach. Their allegation that Lane never intended to comply with the stock purchase agreement was sufficient to plead the scienter required under § 523(a)(2)(A). *See* Bankruptcy Rule 7009 (adopting Fed.R.Civ.P. 9(b) for application in adversary proceedings) ("intent, knowledge, and other condition of mind of a person may be averred generally").

Moreover, appellants allege that, *after* the Indian Hill shares were transferred, Lane refused to make the promised downpayment until appellants acceded to a disadvantageous amendment of the stock purchase agreement. Finally, appellants allege that Lane never *applied* for the subdivision approval on which appellants' right to payment of the last two installments was made contingent under the terms of the amended agreement. We cannot agree that proof of these allegations, together with all reasonable inferences therefrom,

---

**7.** Appellants' summary legal conclusion that the funds disbursed to Lane for the second installment were "property of the plaintiffs [appellants]" is belied by the facts alleged in the pleadings, which demonstrate at best a contractual claim to payment of the second installment. *See Kadar Corp. v. Milbury,* 549 F.2d 230, 235 (1st Cir.1977) ("the court will not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened") (quoting 5A Wright & Miller § 1357 at 597); *Nelson v. Monroe Regional Medical Center,* 925 F.2d 1555, 1559 (7th Cir.1991) (court need not accept legal conclusions in evaluating

pleadings); 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 12.07[2.–5] at 12–63 to –64 & n. 6 (2d ed. 1990) (legal conclusions, deductions or opinions not given presumption of correctness).

**8.** Not all courts require that a sufficient § 523(a)(2)(A) claim state that the claimant acted in reasonable reliance on the false representation. *See, e.g., In re Ophaug,* 827 F.2d 340, 342–43 & n. 1 (8th Cir.1987). As the rule 12(b)(6) record in the present case adequately avers reasonable reliance, we take no position on the matter.

*could not* support a finding of fraudulent intent sufficient to sustain a determination that some or all of Lane's debt to appellants is nondischargeable. Thus, appellants state a minimally sufficient claim for relief under Bankruptcy Code § 523(a)(2)(A). *See In re Krause,* 114 B.R. at 606 (allegation that debtor fraudulently intended not to comply with agreement at time it was made states claim for relief under § 523(a)(2)(A)).[9]

### D. *§ 523(a)(2)(B) Claim*

Although appellants charge that Lane fraudulently induced them to transfer their Indian Hill shares by means of a materially false financial statement, *see* Bankruptcy Code § 523(a)(2)(B), their complaint does not allege any particular omission or false information in Lane's financial statement. *See* Bankruptcy Rule 7009 and Federal Rule of Civil Procedure 9(b) ("In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity."). *See also Wayne Investment, Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir.1984) (rule 9 "requires specification of the time, place, and *content* of an alleged false representation") (emphasis added) (quoting *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980)); *DiLeo v. Ernst & Young,* 901 F.2d 624, 626–27 (7th Cir.) (complaint alleging that financial statements failed fully to reflect bad loans was inadequate under 9(b) for failure to identify the bad loans), *cert. denied,* — U.S. —, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990).

### E. *§ 523(a)(4) Claim*

 Appellants' § 523(a)(4) nondischargeability claim, charging fraud or de-

falcation by Lane while acting in a fiduciary capacity, fails for the reasons adduced in the foregoing discussion of their constructive trust claim. *See supra* pp. 696–697.

### III

### CONCLUSION

Appellants took a credit risk when they surrendered their Indian Hill shares in return for Lane's unsecured promise to pay them $1,675,000 later. Lane did not deliver and the parties did not resolve their differences. Although the intervention of bankruptcy is seldom a welcome development for any unsecured creditor, we cannot paint an arm's-length promise to pay as a fiduciary obligation without impermissibly blurring commercial law. At the same time, the complaint distinctly states a minimally sufficient nondischargeability claim under Bankruptcy Code § 523(a)(2)(A) which was erroneously dismissed under rule 12(b)(6).[10]

*For the foregoing reasons, we vacate the district court order affirming the dismissal of appellants' nondischargeability claim under Bankruptcy Code § 523(a)(2)(A), and remand to the district court with directions to remand to the bankruptcy court for further proceedings thereon. In all other respects the order appealed from is affirmed. All parties are to bear their own costs.*

---

**9.** Assuming without deciding that appellants presented a sufficient motion for summary judgment merely by filing their "Memorandum in Opposition to Motion to Dismiss and in Support of Motion for Summary Judgment," summary judgment would not be warranted on their § 523(a)(2)(A) claim, as the summary judgment record would not *compel* a finding that Lane had no intention to comply with the terms of the stock purchase agreement from the outset. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (summary judgment not proper if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *Siegal v. American Honda Motor Co., Inc.,* 921 F.2d 15, 17 (1st Cir.1990) (summary judgment warranted only if moving party is entitled to judgment as a matter of law).

**10.** Of course, we intimate no view as to how the § 523(a)(2)(A) claim is to be resolved on remand.