OPINION OF THE COURT
W. Denis Donovan, J.
By this order to show cause and petition under section 1510 of the Not-For-Profit Corporation Law, petitioner Anthony Viscomi seeks an order permitting disinterment of the remains of his deceased wife from one plot at Oakwood Cemetery and reinterment in another plot at Oakwood that he is in the process of purchasing. The need for this application to the court is occasioned by the objection and lack of consent to this desire by the owner of the current plot, i.e., his wife’s sister, the respondent Barbara McGuire; Oakwood Cemetery has had no objection throughout and expresses its written consent here to the petitioner’s request.
The petitioner and his wife, Eleanor Ann Viscomi, were married for 42 years upon her sudden and unexpected demise on August 16, 1993 at 58 years of age. They had one surviving son, Richard, who is himself now married with three children and living here in Westchester County.
Petitioner states that in his sudden grief and shock, he acceded to the suggestion of the sister that his wife be buried in the last unreserved space of a six grave plot in Oakwood Cemetery owned by her family but that upon further reflection as to his own future burial wishes and the desire of the son for himself and possibly his own children to someday lie in repose all together, petitioner decided to purchase his own multispace plot in the same cemetery. His sister-in-law has refused, however, to give her consent to the reburial.
The law regarding disinterment, now contained in section 1510 (e) of the Not-For-Profit Corporation Law, has been the same for many years. It provides in pertinent part: "A body interred in a lot in a cemetery owned or operated by a corporation incorporated by or under a general or special law may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased. If the consent of any such person or of the corporation can not be obtained, permission by the county court of the county, or by the supreme court in the district, where the cemetery is situated, shall be sufficient. Notice of application for such permission must be given, at least eight days prior *715 thereto, personally, or, at least sixteen days prior thereto, by mail, to the corporation or to the persons not consenting, and to every other person or corporation on whom service of notice may be required by the court.”
To justify her lack of consent, the respondent answers that she and her deceased sister, as well as other siblings, were very close and that her sister’s marriage to petitioner was a "difficult one” for the last decade. She makes reference to marital problems and a separation during the marriage. She avers that in 1988 her sister expressed a wish to be buried with their recently departed mother. She further relates that on the night of her sister’s death in 1993, when petitioner asked her what burial arrangements should be made, she responded that that was for him to decide and he answered that he "didn’t know what to do.” She then advised him of his wife’s expressed wish five years earlier to be buried with her mother, that there were two spaces left in her family’s plot with one being reserved for an unmarried brother, and that his wife could use the remaining site. She avers that she also advised him of the possibility of buying his own family plot but he declined and accepted her offer, paying for all the costs for that burial. As for herself, she will be buried elsewhere.
According to respondent, after petitioner failed to obtain a headstone for over two years and was only then ordering one that the cemetery to her knowledge, would not allow, she herself proceeded to order a headstone for her sister that would be allowed. She alleges it was this incident that precipitated petitioner’s change of mind and, after she refused her consent to reburial, this proceeding was commenced by him.
Petitioner concedes there was a 9-month separation from his wife nearly 10 years prior to her death but stresses that they reconciled and had a close and wonderful last decade together, especially after his retirement, hopscotching the east coast together in his private plane. Indeed, on the very day his wife was stricken, they had returned from an airplane trip to upstate New York where they branched with friends. Both he and his son by separate affidavits relate that over the last few years, there were strained feelings between the deceased and her sister over family matters, that she never mentioned to either of them a wish on her part to be buried with her mother and that the idea that she should be so buried was actually initiated by respondent on the night of her sister’s death. Petitioner alleges he was in such shock and grief that he unthinkingly agreed, never truly conceiving the fact that he would never be able to join her in repose.
*716 While he does not directly controvert that his wife may have once expressed a wish to her sister to be buried with her mother, he does call its probability into question by averring that in their 42 years together she never made any such expression to him. Rather, he relates how from time to time she asked about their funeral arrangements together but he never took any action in this regard. He also swears his wife never expressed an interest to him to be buried in her mother’s plot, and on his own account, he never intends or intended to be buried there; indeed, there is no room for either him or his son.
The affidavit of the son is more pointed. He recites the animosity of his maternal grandmother toward both his father and mother and the further fact that at the time of his mother’s death, his mother had not been speaking to respondent for some months.
Legal precedent is available to determine whether equity will intervene to disturb a final resting place and while certain legal guidelines have long been formulated, a study of precedent reflects that the particular facts and circumstances of each instance must be carefully and discreetly measured against these guidelines.
As (later Chief) Judge Fuld observed in Matter of Currier (Woodlawn Cemetery) (300 NY 162, 164): "The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned. (See Yome v. Gorman, 242 N. Y. 395, 403; Matter of Ackermann, 124 App. Div. 684, 685.) While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, exercising a 'benevolent discretion’, will be sensitive 'to all those promptings and emotions that men and women hold for sacred in the disposition of their dead’. (Yome v. Gorman, supra, 242 N. Y., at p. 402.) And looming large among the factors to be weighed are the wishes of the decedent himself.”
In Matter of Frost v St. Paul's Cemetery Assn. (44 Misc 2d 589, 591), Judge John J. Walsh, County Court, Oneida County, in 1964 recapitulated the main guidelines to be used as follows: "Where judicial sanction is sought to disturb the quiet of the grave, there must be considered (a) The deceased’s wishes to which deceased may have given expression during his lifetime, (b) The religious convictions of the deceased, (c) By whose direction the choice of situs of burial was made, (d) The desires and *717 motives of those of close kin, especially of a spouse prompting a change in location, (e) The sanctity of sepulture.” (Citations omitted.)
As applied here, the decedent’s own wishes are, at best, vague. It may be that in 1988, moved by her mother’s death, she expressed a wish to be buried with her mother. Neither hearsay principles nor the Dead Man’s Statute (CPLR 4519) prevent receipt of such a declaration or expression here. While traveling the avenue of a special proceeding to which such rules of evidence normally apply, appellate and other authority have noted that Not-For-Profit Corporation Law § 1510 (e) not only designates the request to court as an "application” but allows for service of any required notice by mere regular mail, bespeaking a legislative intent to informalize the proceeding with relaxation of the rules of evidence so as to allow such expressions by a deceased to find their way into the record (Matter of Conroy, 138 AD2d 212; Matter of Elman, 152 Misc 2d 656). The problem, however, is that the sister has not buttressed her representation with affidavits of others at least one of whom, another sister, is alleged to have overheard the remark. Next, the fact that the wish in 1988 is neither recent nor expressed in causa mortis but rather was expressed in the emotional tide of her mother’s death, dilutes the strength and probity of any such expression. Finally, it is not alleged by respondent that her sister knew, by virtue of the number of spaces left, that any such burial would necessarily exclude the interment of her spouse with her. Hence, any such expression of wish by the decedent, if given, cannot be determinative.
As for religious convictions, the deceased is conceded to have been an Episcopalian as is her husband. No evidence is presented by the sister that either the Episcopalian faith or Eleanor Viscomi’s own personal views precludes disinterment or reburial. Further, Oakwood Cemetery appears to be nondenominational and has no policy or rules against disinterment.
By whose direction was the choice of burial site made? Whether initially suggested sua sponte by the sister or in response to petitioner’s question to her on the matter, it must be plainly recognized that petitioner obviously made or acceded to the choice and fully paid the costs of the burial. But again, it is not shown by the sister that he was aware in his grief that he was thereby excluding himself from ever reposing with his wife of 42 years much less that the thought of the ultimate repose of his own child — a thought unwelcomed and avoided by *718 any parent — was brought to bear on his initial choice. (Matter of Inzero, 278 App Div 945 [2d Dept].)
The fourth recognized factor, the desire and motive of close kin and especially of a spouse to change location, should be the most important, absent clear direction otherwise. Much is made by the sister of the "marital difficulties” allegedly experienced by the deceased, but these are not specified nor shown or claimed to have been of recent origin. Petitioner concedes the 9-month separation that occurred after more than 30 years of marriage but reconciliation was honestly accomplished as petitioner and his wife remained together for yet a fourth decade. The court must ask here what long-term marriage does not have its periods of unsettlement? Something of glass walls and stones comes immediately to mind. The overwhelming fact is that reconciliation, a policy much favored in law, did take hold and, on this record, successfully. Half of this 10-year reconciliation took place after the demise of the decedent’s mother and after any expression of wish, on her part, to be buried in her family plot. But for her totally unexpected death, what other expression of wish might she have made? On this point petitioner avers that his wife often asked him of their burial plans and he instinctively failed to address her concern. The affidavit of the son establishes that both he and possibly his own children desire the opportunity of someday lying in repose with both his parents and his children’s grandparents.
The sanctity of sepulture, i.e., the right to have one’s remains respected and undisturbed in his or her last resting place, is a protection afforded by the law. When the validity of that place is clearly shown, only some controlling public reason or superior private right may compel a disturbance of sepulture. The wishes of a surviving spouse or child, for reasons not arbitrary or unsubstantial, have often been recognized as an example of that superior right in the absence of a contradictory expression by decedent. (Matter of Currier [Woodlawn Cemetery], 300 NY 162, supra.) In two other appellate cases, removal at the wish of a surviving spouse who initially chose the site was denied, but in each instance, there was an adjoining gravesite available to and for the surviving spouse and denial was conditioned upon making such adjoining plot available (Matter of Fromm, 280 App Div 1022; Matter of Costa, 83 NYS2d 65, affd 274 App Div 872); no such availability of an adjoining plot is shown here.
In the words of Judge Benjamin Cardozo, when none of the factors weighing in against removal are present or, if present, *719 are sufficiently diluted by circumstance, removal "to satisfy a longing that those united during life shall not be divided after death, may seem praiseworthy and decorous”. (Yome v Gorman, 242 NY 395, 403, supra)
Provided that petitioner purchases a suitable gravesite at Oakwood Cemetery and complies with all rules and regulations of law and the cemetery, including all necessary fees for removal and restoration of the present site, and upon repayment to respondent of any headstone cost actually incurred, this application is granted and the remains of his deceased wife, Eleanor Ann Viscomi, presently interred in plot No. 1504 shall be removed to such other plot.