OPINION OF THE COURT
Kenneth A. Davis, J.
Defendant Arthur Strong II’s motion for an order granting summary judgment dismissing the complaint and all cross claims against the defendant and ordering the disinterment of Gilbert Perlman is decided as follows:
*61 This unfortunate case stems from the sale of burial plots by plaintiff Corporation of the Roslyn Presbyterian Church and Congregation (corporation). The facts of this case are undisputed. Defendant Ellyn Perlman (Perlman) purchased a burial plot from the corporation following the untimely death of her husband Gilbert Perlman. The corporation’s secretary conveyed the rights to the plot, lot 157, to Perlman on January 3, 1997. (Defendant’s exhibit 11.) Gilbert Perlman was buried in the plot on or about January 6, 1997. The problem arose when Perlman went to the cemetery to arrange for a headstone to be placed at the burial site. The corporation, at that time, determined that it had mistakenly sold burial plots that were owned by the Strong family. Plaintiff admits that lots 157 and 158 were deeded to the Reverend Charles Strong on November 21, 1873. Defendant Strong has submitted a deed to that effect. (Defendant’s exhibit 7.) Furthermore, Strong entered into a perpetual care agreement with the corporation in 1940 and said agreement was reconfirmed in 1969 by Arthur Sanzenbach, manager of the cemetery. (Defendant’s exhibit 8.) The Strong family has buried numerous members of their family in these plots, including but not limited to grandparents and parents of Arthur Strong II (Strong). The last person buried in the plot was Strong’s mother in 1968. Upon discovery of the error, the corporation contacted Perlman to arrange for disinterment of the decedent. Perlman refused to consent to said disinterment.
The instant action was commenced on or about October 17, 2000 by the filing of a summons and complaint. Issue was joined as to defendants Strong and Perlman by the service of answers with counterclaims and cross claims on November 22, 2000 and December 11, 2000, respectively. Plaintiff responded to the counterclaims of both defendants in late December of 2000 and early January of 2001. Perlman replied to Strong’s cross claim on December 8, 2000. The parties have appeared for numerous court conferences and certified this matter ready for trial.
Defendant Strong has presented sufficient evidence to prove that they were the rightful owners of the plots in question. The deed dating back to 1873 in addition to the perpetual care agreement and correspondence prove that they maintained a presence and ownership of the property. The court hereby declares that Strong is the legal and equitable owner of lots 157 and 158.
Article 15 of the Not-For-Profit Corporation Law regulates the operation of cemeteries within the state. Section 1510 (e) *62 provides that “[a] body interred in a lot in a cemetery owned or operated by a corporation * * * may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased.” If consent cannot be obtained from the requisite parties, section 1510 (e) provides for judicial intervention. Under this section the formal requirements of the CPLR, specifically the service of a summons and complaint, are not applicable and service can be completed by ordinary mail. Service by ordinary mail must be made 16 days prior to the return date of the application. In the interest of justice and judicial economy, this court finds that service was proper and the instant motion shall be treated as a petition under article 15. An evidentiary hearing is not required in the instant action as the papers do not raise a material issue of fact. (Matter of Lichtman v Highland View Cemetery Corp., 289 AD2d 244 [2d Dept 2001].)
The court in determining whether disinterment is appropriate must exercise “benevolent discretion.” (Viscomi v McGuire, 169 Misc 2d 713, 716 [Sup Ct, Westchester County 1996].) The court in Viscomi set forth specific factors to be viewed, including the religious convictions of the deceased, who chose the burial site, the desires and motives of those who are of close kinship to the deceased, especially of a spouse, in prompting a change of location, and the sanctity of the burial ground. (Id; see, also, Matter of Frost v St. Paul’s Cemetery Assn., 44 Misc 2d 589 [Sup Ct, Oneida County 1964].)
In Matter of Currier (300 NY 162, 164 [1949]), the Court of Appeals stated as follows:
“The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned. * * * While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, [must] exercis[e] a ‘benevolent discretion’ * * * .”
Furthermore, “[e]quity will treat the subject-matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties have been executed exactly as they ought to have been; not as the parties might have executed them.” (Matter of Zablotower v Mt. Zion Cemetery, 98 Misc 2d 77, 79 [Sup Ct, Queens County 1979].) In Yome v Gorman (242 NY 395, 402 [1926]), Justice Cardozo *63 stated that the Court must “giv[e] heed to all those promptings and emotions that men and women hold for sacred in the disposition of their dead, must render judgment as it appraises the worth of the competing forces.”
In a controversy regarding ownership of a burial plot not containing any burials, the question of title and ownership of the burial lot is obviously of great import, if not the sole consideration. However, the question of disinterment of a body is dependent upon the exercise of discretion or equitable jurisdiction and in either event, the effect of legal title is merely a reason to be considered by the court. (Matter of Evergreen Cemetery Assn. v Jurgensen, 34 AD2d 709 [3d Dept 1970].) In Evergreen, the Court denied the request for disinterment by the owners, who purchased the land but did not use the plots prior to the second owners burying the decedent Jurgensen, in the plot. The first owners after the dispute arose buried their decedent in the grave next to Jurgensen. The Court held (at 710-711) that there were “neither any equities nor legal rights * * * which are sufficient to justify disturbing the rest and repose of the remains of* * * Jurgensen.” This is not the situation in the instant case.
This court finds the negligent conduct of the plaintiff in the instant action abhorrent. However, that negligence alone does not warrant the stripping of title from the Strong family.
While this court has spent considerable time researching case law within and outside this jurisdiction and contemplating an appropriate solution to this dilemma, the decision must be based on the law and not on sentiment or emotion.
The Court of Special Appeals of Maryland addressed this issue in Gallaher v Trustees of Cherry Hill M.E. Church (42 Md App 186, 399 A2d 936 [1979]). In Gallaher, in or about 1909, lot 4, row H was sold to a Mrs. Koelig, who subsequently gave the lot to her son, J. Oliver Koelig. The son entered into a perpetual care agreement with the cemetery and he visited the cemetery annually. In 1974, Ella Cato and Robert Gallaher purchased the same burial plots located in lot 4, row H from the cemetery. Mr. Gallaher was interred in one of the plots in 1976. In 1977, during his annual visit to the cemetery, Mr. Koelig discovered the interment of Mr. Gallaher in his family burial plots. The cemetery, as in the instant matter, attempted unsuccessfully to mediate a settlement of the dispute. The court in ordering the disinterment and interment of the decedent held, in pertinent part, that where the first owner paid for perpetual care and visited the plots and “have done *64 nothing to create the wrongful recent resale of their lot or the resulting mistaken burial of a stranger therein, we believe that equity should, not vitiate all that and strip them of their title and use of the burial lot * * * (Id., 42 Md App at 192, 399 A2d at 940.) The facts of the Gallaher case are directly on point with the instant matter. Since the Gallaher case was a case of first impression in Maryland, the court relied heavily on New York law, specifically Yome, Currier and Evergreen.
In the instant matter, the burial plots in question have been in the Strong family since 1873 and have been continuously used since that time. The family paid for a perpetual care contract with the corporation and has continually visited the plots. Strong has set forth his and his family’s desires to use the burial plots in the future. This burial ground is rich in history of the Strong family and the court finds that this sacred ground should remain within their family. “[S]urvivors of close blood should not be denied the solace of burial together, or that those already interred should have strangers buried in their family plot.” (Matter of Turkish, 48 Misc 2d 600, 600 [Sur Ct, Kings County 1965].) The court in the Turkish matter addressed the historical and practical reasons for familial burial grounds. “[C]ontiguity in burial was not only a sentiment, but to aid in records of kinship, pedigree and family history through such assembling of graves and chosen memorials.” (Id. at 601.)
Based on the above, the court finds that Strong has set forth good and substantial reasons for the disinterment (Currier, supra), that Strong has the legal and equitable title and right to access the plot (Evergreen, supra; City of New York v Washington Cemetery, 17 Misc 2d 847 [Sup Ct, Kings County 1959]), and that Perlman has not set forth religious reasons or alleged that personal views of the deceased preclude disinterment (Zablotower, supra; Viscomi, supra). Furthermore, the corporation has offered to provide other plots to the Perlman family to inter Mr. Perlman. The court finds that the equities are with defendant Strong and that the body of Gilbert Perlman should be disinterred.
Therefore, since Perlman does not have title to the plot, it is the order of this court that the body of Gilbert Perlman shall be disinterred within 90 days of this order. Additionally, it is ordered that the corporation is to provide to Perlman any and all available burial plots to reinter Mr. Perlman. The corporation shall incur all costs associated with said disinterment and reinterment including but not limited to permits, opening and *65 closing of the old and new grave and any other funeral rangements that the Perlman family may wish to utilize. ar-